1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11   TIMOTHY JUNYOUNG PARK,              Case No.:  20cv242-BAS (MSB)

12                         Plaintiff,
                                         **ORDER ON JOINT MOTION FOR**
13   v.                                  **DETERMINATION OF DISCOVERY**
                                         **DISPUTE**
14   JAGUAR LAND ROVER NORTH AMERICA,    **[ECF No. 21]**
     LLC, et.al.
15
16                       Defendants.

17

18          Before this Court is a Joint Motion for Determination of Discovery Dispute filed by

19   Plaintiff Timothy Park ("Plaintiff") and Defendant Jaguar Land Rover North America, LLC

20   ("Defendant") on July 16, 2020, contesting the sufficiency of Defendant's responses to

21   certain of Plaintiff's Requests for Production of Documents ("RFPs").  (ECF No. 21.)  The

22   Court will address each of three disputed issues in turn.

23                          **I.    BACKGROUND**

24          Plaintiff initially filed this lemon law case in San Diego Superior Court on January

25   26, 2020, relating to Defendant's failure to repair or repurchase Plaintiff's Certified Pre-

26   owned 2016 Jaguar F-Type ("the Vehicle").  (ECF No. 1-3 at 4-9.)  In his complaint,

27   Plaintiff alleges that he purchased the Vehicle, manufactured and distributed by

28   Defendant, on or around July 2, 2019.  (Id. at 5.)  The Vehicle was covered by express,

written and implied warranties guaranteeing the utility and performance of the vehicle.  (Id. at 5-6)  Plaintiff claims that during the warranty period, he experienced numerous defects that substantially interfered with the Vehicle's use and value, including "defects which . . . caused low battery warnings, supercharger failure and continuing issues, rattling noises, exhaust issues, Vehicle failure to start, various dashboard warning lights, wheel bearing issues, squeak when stopping, quiescent box internal failure, and other defects."  (Id. at 5-6.)  Defendants failed multiple times to repair the Vehicle and refused to buy it back.  (Id. at 5-6, 8.)  Plaintiff brings four causes of action under the Song-Beverly Consumer Warranty Act ("the Act"), three for breach of warranty and one for failure to promptly repurchase product.  (Id. at 4-10.)

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure authorize parties to obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Relevant information need not be admissible at trial to be discoverable.  Id.  District courts have broad discretion to determine relevancy for discovery purposes.  See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).  Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; the requesting party has had ample opportunity to obtain discovery; or the discovery sought is beyond the scope of Federal Rule of Civil Procedure 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C).

Though courts "have a wide latitude in controlling discovery," Rule 26(b)(2) dictates that limitations are proper where the burden or expense of the discovery requests outweighs the benefits of disclosure.  U.S. Fidelity and Guar. Co. v. Lee

1   Investments LLC, 641 F. 3d 1126, 1136 (9th Cir. 2011) (internal citations omitted).  The

2   Advisory Committee emphasizes that the objective behind the addition of the

3   proportionality language to Rule 26(b)(1) "is to guard against redundant or

4   disproportionate discovery" and "to encourage judges to be more aggressive in

5   identifying and discouraging discovery overuse."  Fed. R. Civ. P. 26, advisory committee

6   note, 2015 amendments.

7       A party may request the production of any document within the scope of Federal

8   Rule of Civil Procedure 26(b).  Fed. R. Civ. P. 34(a).  "For each item or category, the

9   response must either state that inspection and related activities will be permitted as

10  requested or state an objection to the request, including the reasons."  Fed. R. Civ. P.

11  34(b)(2)(B).  The responding party is responsible for all items in "the responding party's

12  possession, custody or control."  Fed. R. Civ. P. 34(a)(1).

13      When a party seeks to avoid disclosure of certain documents based on a claim of

14  privilege, it bears the burden of establishing that privilege.  See, e.g., Davis v. Fendler,

15  650 F.2d 1154, 1160 (9th Cir. 1981) (defendant failed to adequately support his claim of

16  privilege); R.J. Reynolds Tobacco v. Philip Morris, Inc., 29 F. App'x 880, 882 (3d Cir. 2002)

17  (holding subpoena recipient failed to meet its burden because "the skeletal descriptions

18  in its privilege log do not support a trade secret privilege").

19      "A plaintiff pursuing an action under the Song-Beverly Act has the burden to

20  prove the following elements: (1) the product had a defect or nonconformity covered by

21  the express warranty; (2) the product was presented to an authorized representative of

22  the manufacturer for repair; and (3) the manufacturer or its representative did not

23  repair the defect or nonconformity after a reasonable number of repair attempts."

24  Robertson v. Fleetwood Travel Trailers of California, Inc., 50 Cal. Rptr. 3d 731, 741

25  (2006) (citing Oregel v. Am. Isuzu Motors, Inc., 109 Cal. Rptr. 2d 583 (2001)).  If a

26  plaintiff can establish that the violation of the Act was willful, the judgment may include

27  a civil penalty up to twice the amount of actual damages.  Cal. Civ. Code § 1794(c);

28  Zargarian v. BMW of N. Am., LLC, Case No. CV 18-4857-RSWL (PLAx), 2019 WL 6111732,

3

1  at *2 (C.D. Cal. Sept. 23, 2019), review denied, No. CV 18-4857-RSWL-PLA, 2019 WL

2  6111733 (C.D. Cal. Nov. 5, 2019).  Whether "the manufacturer, distributor, or retailer

3  reasonably and in good faith believed the facts did not call for a refund or replacement"

4  is relevant to the willfulness determination.  Id. at *2.

5                                    III.    ANALYSIS

6          The disputed RFP responses fall into three categories:  (1) the identity and contact

7  information of the Vehicle's prior owner ("Prior Owner") as well as the warranty repair

8  history performed during the prior ownership, which Defendant redacted from service

9  records; (2) documents identifying other owners of the same year, make and model as

10  the Vehicle, who complained to Defendant about the battery draining issue Plaintiff

11  alleged in the Complaint; and (3) documents relied on by Defendant to develop the

12  technical service bulletins performed on the Vehicle.   (ECF No. 21-1 at 2, 3, 6.)

13  **A.     RFP Nos. 5, 7, 13: Prior Owner's Identity and Contact Information and Warranty**

14  **        Repair History**

15          Plaintiff's RFP Nos. 5, 7, and 13 are at issue because Defendant has redacted the

16  identity and contact information for the Prior Owner, as well as the warranty repair

17  history during the period of prior ownership.  (ECF No. 21-1 at 2-3, 8; see also ECF No.

18  21-3 at 9-12 (showing redaction of warranty repair history).)  Plaintiff contends that the

19  Prior Owner is a critical witness regarding the Vehicle's history of performance,

20  maintenance and repair, particularly because Defendant claims that Plaintiff caused the

21  Vehicle's battery-related issues by installing an insurance dongle.  (ECF No. 21-1 at 2.)

22  Similarly, Plaintiff argues that the warranty repair history is relevant evidence.  (Id. at 2.)

23  Defendant argues that because it has produced records that capture "the subjective

24  complaints of the then current owner [of the Vehicle]",  "the description of the repairs

25  done by dealership technicians", and the "subjective diagnostic information in the

26  [Vehicle] that captures when any errors or malfunctions occur," the Prior Owner's

27  identity and personal information are not relevant to the instant dispute and should be

28  protected by a privacy privilege.  (Id. at 8.)

4

1

### 1.    Relevance

Defendant objected to any disclosure of documents related to the Prior Owner as not relevant or proportional to the needs of the case.  (See, e.g., ECF No. 21-2 at 9.)  This Court finds the Prior Owner's identity and contact information are both relevant and proportional to the needs of the case.  Contrary to Defendant's assertion that "the repair orders for the [Vehicle] prior to Plaintiff's ownership do not note or reflect any of the issues complained of in Plaintiff's complaint," (ECF No. 21-1 at 8), Plaintiff has attached an Internal Service Contract and Claim Detail Report regarding a service performed on October 1, 2018 (approximately nine months before Plaintiff purchased the Vehicle).  (ECF No. 21-3 at 13-14.)  These documents show that the Prior Owner requested a battery replacement because of weak or low battery power and the battery not operating properly.  (Id. at 13-14.)  At the time of the repair, the technician replaced the inoperative battery after performing a complete battery, starter, and charging system diagnostic.  (Id.)  A claim list report produced by Defendant in discovery and attached to the Joint Motion shows that on August 12, 2019, the month after Plaintiff purchased the Vehicle, Plaintiff presented the Vehicle to the dealership noting that the low battery light was on.  (Id. at 11.)  The technician again found that the battery had failed, and it was necessary to replace the faulty battery.  (Id.)

This history suggests to the Court that the Prior Owner is likely to have further information about the Vehicle's performance, such as how the Vehicle performed leading up to the October 1, 2018 request for a battery replacement, and how the Vehicle performed thereafter.  Such evidence may very well bear on whether there was a defect in the vehicle related to Plaintiff's complaints of, among other things, "low battery warnings, supercharger failure and continuing issues, . . . Vehicle failure to start, [and] various dashboard warning lights."  (ECF No. 1-3 at 5.)  While the Prior Owner's testimony appears relevant in any event, the fact that Defendant has referenced the Vehicle's performance under the Prior Owner in its interrogatory responses that evidently question whether Plaintiff caused the battery issues he complained of, (see,

1   *e.g.*, ECF No. 21-2 at 10), further supports this Court's conclusion that the Prior Owner is

2   a percipient witness, likely to give relevant testimony.  For the same reasons, the

3   redacted warranty repair history from the prior ownership is relevant.

4       **2.**    **Privacy Privilege**

5          Defendant further objected to the RFPs to the extent that they sought the Prior

6   Owner's name and contact information because such information is protected by the

7   Prior Owner's right to privacy.  (See, e.g., id. at 10.)  Plaintiff maintains that privacy

8   interests do not shelter witness' identity and contact information from disclosure and

9   the protective order in this case [ECF No. 19] will sufficiently address any privacy

10  concerns.  (See, e.g., ECF No. 21-2 at 9-10.)

11         In diversity actions, questions of privilege are controlled by state law.  In re Cal.

12  Pub. Utils. Comm'n, 892 F. 2d 778, 791 (9th Cir. 1989); Fed R. Evid. 501 ("in a civil case,

13  state law governs privilege regarding a claim or defense for which state law supplies the

14  rule of decision").  Because this case involves state substantive claims and was removed

15  to federal court based on diversity jurisdiction, (see ECF No. 1), California law governs

16  applications of the privacy privilege in the instant diversity case.

17         In California, the right to privacy is set forth in Article I, Section I of the California

18  constitution.  It is not an absolute right, but a right subject to invasion depending upon

19  the circumstances.  Hill v. National Collegiate Athletic Ass'n, 865 P.2d 633, 654 (Cal.

20  1994).  In Pioneer Electronics, Inc. v. Superior Court, 150 P.3d 198 (Cal. 2007), the

21  California Supreme Court set forth the framework for assessing privacy claims under the

22  California Constitution: (1) the claimant must have a "legally protected privacy interest,"

23  such as an interest in precluding dissemination of sensitive information or in making

24  intimate personal decisions without outside intrusion; (2) a claimant must have a

25  "reasonable expectation of privacy" founded on broadly based community norms; (3)

26  the invasion of privacy must be "serious"; and (4) the privacy interest must outweigh

27  the countervailing interests, such as discovery rights.  Id. at 204-06 (citing Hill, 865 P.2d

28  at 654-57).  However where, as here, the personal information sought is clearly relevant

1  and potentially imperative to a party's claim, it is often accepted that a protective order

2  can adequately address the privacy interest and discovery is permitted.  See Oakes v.

3  Halverson Marine, Ltd., 179 F.R.D. 281, 284 (C.D. Cal. 1998).

4       This framework has been applied by many courts in deciding how to resolve a

5  discovery request for the personal information of nonparties.  See e.g., Puerto v.

6  Superior Court, 70 Cal. Rptr. 3d 701, 703 (Cal. Ct. App. 2004) (where the constitutional

7  right of privacy is involved, the court must apply a balancing of countervailing interests);

8  Pioneer Electronics, Inc., 150 P.3d at 206 (customer identifying information was a

9  proper area of discovery because the court found these consumers could provide

10 information that pertained to the plaintiff's claims); Hill, 865 P.2d at 656 ("Conduct

11 alleged to be an invasion of privacy is to be evaluated based on the extent to which it

12 furthers legitimate and important competing interests.").  However, if "there is no

13 serious invasion of privacy," courts generally find "no balancing of opposing interests is

14 required."  Puerto, 70 Cal. Rptr. 3d at 711.  In general, disclosure of nonparty contact

15 and personal information is appropriate where a discovery request pertains to

16 "percipient witnesses to the relevant issue" because these individuals are "considered

17 persons having discoverable knowledge."  McArdle v. AT&T Mobility LLC, No. C09-

18 117CW(MEJ), 2010 WL 1532334, at *4 (N.D. Cal. April 16, 2010).

19      Regarding the first factor of this analysis, whether the personal identifying

20 information of customers is a legally protected privacy interest, California Courts have

21 recognized a privacy interest in an individual's identity and contact information.  See id.,

22 at *3.

23      About the second factor of the privacy analysis, whether an individual has a

24 "reasonable expectation of privacy" in the information sought, this Court finds Puerto

25 illustrative.  Puerto involved a discovery dispute regarding the plaintiff's request for the

26 personal identifying information of the defendant's employees, who the defendant had

27 listed as witnesses.  Puerto, 70 Cal. Rptr. 3d at 704.  This information, the plaintiff

28 claimed, was relevant to the dispute because these individuals were percipient

1  witnesses to the facts underlying the litigation.  Id. at 706-07.  In evaluating the

2  defendant's claim of privacy privilege, the court noted that employees probably

3  expected their information would generally be kept private when they provided it as a

4  condition of their employment.  Id. at 709.  Nevertheless, the court did not believe

5  employees would want their identities withheld from a plaintiff seeking relief for wrongs

6  that occurred at their shared workplace.  Id. (citing Belaire-West Landscape, Inc. v.

7  Superior Court, 57 Cal. Rptr. 3d 197, 202 (Cal. Ct. App. 2007)).  "The fact that we

8  generally consider residential telephone and address information private does not mean

9  that the individuals would not want it disclosed under these circumstances."  Id.; see

10  also Pioneer, 53 Cal. Rptr. 3d at 516 (the plaintiff's "proposed disclosure" (the contact

11  information of the defendant's consumers who had filed complaints with regard to the

12  defendant's commercial products) "was not 'particularly sensitive' as it involved

13  disclosing neither one's personal medical history or current medical condition nor

14  details of disclosing one's personal finances or other financial information, but merely

15  called for disclosure of contact information already voluntarily disclosed to [the

16  defendant]"); McArdle, 2010 WL 1532334 at * 3 ("Here, like in Pioneer, release of the

17  customer identifying information would be limited to Plaintiff and his counsel in this

18  case . . . [and] involves disclosure of contact information already voluntarily disclosed to

19  Defendants . . . [and] will help [p]laintiff learn the names of other persons who might

20  assist in prosecuting this case, and [ ] involves no revelation of personal or intimate

21  activities, or similar private information.").  The court in Puerto found this factor

22  weighed in favor of disclosure.  Puerto, 70 Cal. Rptr. 3d at 709.

23       Similarly here, the Prior Owner likely expected Defendant to protect identity and

24  contact information provided as a condition of the lease or purchase.  However, it is

25  reasonable to think that the Prior Owner would not object to the release of that

26  information in the context of litigation, particularly where Plaintiff complains of

27  problems with the vehicle that resemble those experienced by the Prior Owner.  The

28  nature of the information is not deeply personal.  Individuals also generally understand

1  that they may be called to testify to things they have witnessed.  Therefore, the Court

2  finds this factor weighs in favor of disclosure.

3       In evaluating the third factor of the privacy invasion analysis, which considers the

4  seriousness of the invasion upon privacy rights, the court in <u>Puerto</u> concluded, "the

5  requested information, while personal, [was] not particularly sensitive as it [was] merely

6  contact information, not medical or financial details, political affiliations, sexual

7  relationships, or personnel information."  <u>Puerto</u>, 70 Cal. Rptr. 3d at 710.  Rather, such

8  information requests fall within "basic civil discovery" procedures as the court

9  concluded "[n]othing could be more ordinary in discovery than finding out the location

10 of identified witnesses so that they may be contacted and additional investigation

11 [could be] performed."  <u>Id.</u>; <u>see also</u> <u>McArdle</u>, 2010 WL 1532334 at * 4 (the court found

12 "minimal information" requests regarding discovery of consumer's personal information

13 "is indeed contemplated under the Federal Rules of Civil Procedure as basic to the

14 discovery Process," highlighting that "Rule 26(a)(1)(A) requires each party to disclose . . .

15 the names, addresses and telephone numbers of each individual likely to have

16 discoverable information that the disclosing party may use to support its claims or

17 defenses").  As in <u>Puerto</u>, the information Plaintiff seeks here is "generally discoverable,

18 and . . . neither unduly personal nor overly intrusive."  <u>See</u> <u>Puerto</u>, 70 Cal. Rptr. 3d at

19 710.  This factor favors disclosure of the Prior Owner's identity and contact information.

20      <u>Puerto</u> found that analysis of the fourth factor of a privacy invasion claim,

21 balancing privacy rights against competing interests in favor of discovery, is not required

22 "when the court concludes there is no serious invasion of privacy."  <u>Id.</u> at 711.  Though

23 the court did not consider disclosure of the employees' personal identifying information

24 a serious invasion upon privacy rights, making the balancing unnecessary, the court

25 proceeded to weigh the employees' privacy interests against "permitting access to

26 relevant information necessary to pursue litigation."  <u>Id.</u> at 711-12.  Through this

27 balancing test, the court found that disclosure was appropriate as information regarding

28 percipient witnesses is properly discoverable.  <u>Id.</u>

9

1   Turning to the instant case, because the privacy invasion attendant to disclosing

2   the Prior Owner's identity and contact information is minimal, the Court need not

3   engage in balancing.  However, doing so only serves to confirm the Court's belief that

4   disclosure is appropriate.  Defendant's disclosure will not encroach upon this

5   individual's reasonable expectation of privacy in this basic information.

6   For the reasons stated above, Defendant fails to meet the burden of establishing

7   that privacy privilege should block discovery of the Prior Owner's identity and contact

8   information.  The Court notes that such information can be designated as confidential

9   under the terms of the protective order in this case, providing further protection to the

10   Prior Owner in this litigation.  This Court therefore **GRANTS** Plaintiff's motion to compel

11   the disclosure of responsive documents with the identity and contact information of the

12   former Vehicle owner **UNREDACTED** and **ORDERS** Defendant to comply with

13   supplemental production no later than **August 24, 2020**.

14   Arguing that "Defendant's position is unsupportable," Plaintiff requests discovery

15   sanctions for this issue.  (ECF No. 21-1 at 3.)  Plaintiff's counsel states that he spent over

16   seven hours preparing the motion at the rate on $510 per hour.  (ECF No. 21-3 at 2.)

17   Federal Rule of Civil Procedure 37(a)(5)(A) states that where a discovery motion is

18   granted, the Court "must, after giving an opportunity to be heard, require the party or

19   deponent whose conduct necessitated the motion, the party or attorney advising that

20   conduct, or both to pay the movant's reasonable expenses incurred in making the

21   motion, including attorney's fees.  But the court must not order this payment if . . . the

22   opposing party's nondisclosure, response, or objection was substantially justified[,] or . .

23   . other circumstances make an award of expenses unjust."

24   Here, the Court finds it would be unjust to award costs to Plaintiff.  The issue on

25   which Plaintiff prevailed largely involved Defendant's efforts to protect the privacy

26   rights of a third party, rather than Defendant's own privacy.  Additionally, while Plaintiff

27   succeeded on this singular issue, the remaining issues in this discovery motion are being

28   resolved against Plaintiff.  The Court therefore **DENIES** Plaintiff's request for sanctions.

**B.     Request for Production No. 25: Customers with the Same Problem and Vehicle**

Plaintiff's RFP No. 25 demands "documents identifying customers who have sought repairs for the defects alleged in Paragraph 6 of Plaintiff's Complaint regarding or relating to battery drains and the same make, model and year as the subject vehicle." (ECF No. 21-1 at 26-27.)  Defendant objected to this RFP, arguing in relevant part that the requested information about owners of vehicles other than the Vehicle is irrelevant and disproportional to the needs of the case, seeks private information of third parties, and in unduly burdensome.  (Id. at 27.)

In the first instance, the Court notes that the central request of this RFP is not for documents pertaining to customer complaints regarding battery drain issues in the same mass-produced vehicle Plaintiff purchased, but those "identifying customer" who made those complaints.  The Court largely finds Plaintiff's arguments are directed toward the discovery of complaints rather than the discovery of the complainants' identities.  In the first place, there may be scenarios where discovery of other complaints, properly limited, are relevant and proportional to the case, see Jensen v. BMW of N. Am., LLC, 328 F.R.D. 557, 562 (S.D. Cal. 2019) ("Given the standards recited above for establishing willfulness, the Court finds that information regarding whether the same defects were reported to BMW in other cars of the same make, model, and year as Plaintiff's subject vehicle could conceivably be relevant to whether BMW acted reasonably in denying Plaintiff's warranty claim.").  However, the Court finds discovery of the information requested here, documents identifying every customer who brought a potentially relevant complaint, is overbroad and not proportional to the needs of the case.

The documents Plaintiff seeks are overbroad.  First, customers who complained about battery drain issues in vehicles with the same year, make and model may be identified in any number of documents, unrelated to the complaints that Plaintiff claims are relevant to this case.  Second, "[r]egarding or relating to battery drains," is a broad category of complaints that may come from any number of different causes, including

leaving a vehicle light on.  This request requires Defendant to produce documents identifying every complainant, regardless of whether the specifics of the complaint bear on the facts of this case.  Third, while the contents of the complaints themselves might be relevant, Plaintiff has not explained why the identities of the complainants are relevant.  Plaintiff claims relevance because the complaints may show "other persons who own the same mass-produced vehicle, have complained of the same problems and have had the complaints verified by dealerships as not the consumer's fault."  (ECF No. 21-1 at 4.)  He argues this will "show a potentially widespread problem exists," to undermine Defendant's causation argument.  (Id.)  In this case, the complaints themselves and Defendant's records regarding the same would provide any relevant information.  Plaintiff would not need to contact or depose the third-party complainants to learn what information they conveyed to Defendant.

Because of this considerable overbreadth, the discovery sought is also disproportional.  Recent amendments made to the language of Rule 26 dictate that "'even relevant information is subject to the proportional needs of the case before it is within the scope of discovery.'"  Polaris Innovations Limited v. Kingston Technology Company, Inc., No. CV-16-00300-CJC (RAOx), 2017 WL 3275615, *2 (C.D. Cal. Feb. 14, 2017) (quoting Hoffman v. Cnty. of L.A., No. CV 15-03724-FMO (ASx), 2016 WL 4698939, *5 (C.D. Cal. Jan. 5, 2016)).  Regardless of what efforts need be taken to collect the requested discovery, the requested information is not sufficiently relevant to justify requiring Defendant to respond to this RFP over Plaintiff's complaint regarding a dispute over a single preowned vehicle.

Accordingly, this Court **DENIES** Plaintiff's motion to compel further responses to RFP No. 25.  Considering this ruling, the Court need not address Defendant's objections based on burden and third-party privacy.

/ / /

/ / /

/ / /

**C.    Request for Production No. 20: Documents Used to Formulate Technical Service Bulletins**

In RFP No. 20, Plaintiff seeks "[a]ll documents which were consulted by [Defendant] in developing the technical service bulletins which have been issued for vehicles of the same year, make, and model as the [Vehicle] and were used regarding repairs or service on the [Vehicle]."  (ECF No. 21-2 at 24.)

Technical service bulletins ("TSBs") are generated by manufacturers regarding a problem or defect to provide guidance to repair facilities.  (ECF No. 21-1 at 6; ECF No. 21-2 at 25.)  Plaintiff claims the documents underlying the creation of these TSBs are relevant to the instant dispute and maintains these documents "are likely to lead to discovery regarding the potential root cause(s) of the problems, the prevalence of the problems, and the efficacy of the proposed solution(s)."  (Id.)  Plaintiff specifically notes that Defendant admits "TSB's are in the vehicle's repair history regarding emissions and O2 sensors, which[] present clear exhaust and emission issues," that the Vehicle had oxygen sensor issues while Plaintiff owned it, and that "exhaust issues" are alleged in the Complaint.  (ECF No. 21-1 at 6.)

Defendant objects based on relevance and proportionality, as the documents requested "offer little to no evidentiary value" for Plaintiff's argument.  (ECF No. 21-2 at 26.)  Specifically, Defendant claims that the only TSBs performed on the Vehicle were prior to Plaintiff's ownership, and states, "of the four (4) TSBs that were performed on the [V]ehicle prior to Plaintiff's ownership," Plaintiff only references one TSB "relating to the operation of the oxygen (O2) sensors as being related to concerns Plaintiff experienced." (ECF No. 21-1 at 11.)  Furthermore, Defendant argues that because the only evidence Plaintiff experienced oxygen sensor issues in the Vehicle was a single work order from May 27, 2020, the evidence does not demonstrate that the oxygen sensor issue took more than one attempt to resolve, and so it could not give rise to liability under the Act.  (Id.)  Thus, because Plaintiff's request involves 1) TSBs performed prior to Plaintiff's ownership and 2) several TSBs that do not correspond to the defects

1  complained of in paragraph six of Plaintiff's complaint, Defendant claims that "Plaintiff

2  has failed to demonstrate why documents consulted in developing these TSBs, which do

3  not relate [sic] to Plaintiff's concerns, are relevant to his claims."  (Id.)

4       Under California law, TSBs and similar documents concerning a plaintiff's vehicle

5  can be relevant to liability under the Act.  Jensen v. BMW of N. Am., LLC., 328 F.R.D. 557,

6  565 (S.D. Cal. 2019); see also Zagarian, 2019 WL 611173, at *8 (the plaintiff's request for

7  documents including "service information bulletins" were "limited to vehicles of the

8  same make, model, and year as the vehicle" and thus relevant to the issues in dispute

9  under the Act).  However, to be relevant, the issues addressed in the TSBs should be

10  related to the specific issue Plaintiff experienced.  Jensen, 328 F.R.D. at 563, 565 (finding

11  that some of the plaintiff's requests were "broad[ ] and vaguely defined" and "not

12  necessarily tied to the specific issues that [the plaintiff] experienced with his vehicle"

13  and they should be limited to information that addressed the "problems that the

14  [p]laintiff's vehicle specifically experienced").  Even when the information underlying

15  TSBs is relevant, in federal court the requested information must still be proportional to

16  the needs of the case considering the damages sought by Plaintiff.  See, e.g., Zagarian,

17  2019 WL 611173 at *7-8; Putman v. BMW of North America, LLC, No. CV-17-3485-JAK

18  (KSx), 2018 WL 6137160, *5 (C.D. Cal May 14, 2018) (citing Fed. R. Civ. P. 26 Advisory

19  Committee Note to 2015 Amendment) (the proportionality standard of Rule 26

20  "'encourages judges to be more aggressive in identifying and discouraging discovery

21  overuse'").  The factors to consider when weighing proportionality in discovery, include

22  "the importance of the issues at stake in the action, the amount in controversy, the

23  parties' relative access to relevant information, the parties' resources, the importance

24  of the discovery in resolving the issues, and whether the burden or expense of the

25  proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

26       In the instant Request, Plaintiff is requesting all foundational documents

27  underlying the TSBs that have been performed on Plaintiff's vehicle.  (ECF No. 21-1 at 6.)

28  However, Plaintiff has drawn only a single, weak connection between the TSBs

performed and Plaintiff's alleged defects.  Nothing about the single issue with oxygen sensors in May 2020, which lacking any subsequent complaints, appears to have been resolved, indicates that the underlying documents for all four TSBs performed on the vehicle are significant to this case.  Furthermore, the instant case is not a class-action suit and the causes of action here involve a single car and the utility of a single individual.  (ECF No. 1-3.)  If Plaintiff meets his burden of proving liability under the Act, he will be entitled to civil penalties under California Civil Code 1794(b)(1) and (2), including the Vehicle's purchase price of $68,286.16.  (Id. at 5-6.)  If Plaintiff also proves that Defendant's refusal to repurchase the Vehicle was willful, Plaintiff will be entitled to a civil penalty of twice his damages.  Cal. Civ. Code. § 1794(c).  Although the amount of damages is to be calculated at trial, given that the instant case only involves a single Plaintiff and a single Vehicle, it is unlikely that damages will exceed $200,000.   With respect to the "issues at stake in the action" and "amount in controversy," it is not proportional to disclose the foundational documents for three TSBs that do not appear at all relevant to this case, and one that has at-best doubtful relevance.

Considering "the parties' relative access to relevant information" and "the parties' resources," the Defendant possesses substantial resources and could possibly access the documents Plaintiff requests.  While Plaintiff already has access to TSB's in the Vehicle's repair history regarding emissions and O2 sensors, (ECF No. 21-3 at 5-8), Plaintiff seeks foundational documents underlying the TSBs, which are not otherwise available to Plaintiff.  (ECF No. 21-1 at 6.)

Because Plaintiff has failed to demonstrate any connection between the four TSBs at-issue in this RFP and any repeated performance issue during Plaintiff's ownership of the Vehicle, the Court **SUSTAINS** Defendant's relevance and proportionality objections. The Court therefore **DENIES** Plaintiff's motion to compel further response to RFP No. 20.

/ / /

/ / /

/ / /

1

## IV.   CONCLUSION

2          For the reasons described above, the Court **ORDERS** as follows:

3          1.      Plaintiff's motion to compel disclosure of the identity and contact

4    information of the Prior Owner, and the warranty repair history during the prior

5    ownership is **GRANTED**.  No later than **August 24, 2020**, Defendant must reproduce the

6    affected documents without redacting the Prior Owner's identity and contact

7    information, or warranty repair history;

8          2.      Plaintiff's motion for discovery sanctions is **DENIED**.

9          3.      Plaintiff's motion to compel further response to RFP No. 25 is **DENIED**; and

10         4.      Plaintiff's motion to compel further response to RFP No. 20 is **DENIED**.

11         **IT IS SO ORDERED.**

12   Dated:  August 17, 2020

13

14                                          Honorable Michael S. Berg
                                            United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

20cv242-BAS (MSB)